## CALL v. RICHFIELD OIL CORP. et al.
### No. 13047.

United States District Court
S. D. California, Central Division.
Dec. 28, 1951.

Block & Dunbar, Compton, Cal., and David Mellinkoff, Beverly Hills, Cal., for plaintiff.

Joseph T. Enright and Donald J. Dunne, Los Angeles, Cal., for defendant Monolith Portland Cement Co.

Elden C. Friel, San Francisco, Cal., for defendant J. R. Gillbergh.

WESTOVER, District Judge.

These proceedings involve the rights of the respective parties to certain government land.

On June 26, 1946, defendant J. R. Gillbergh filed in the office of the Bureau of Land Management at Sacramento, California, his application for a noncompetitive oil and gas lease on the lands described in the complaint on file herein. His application was the first filed with the Bureau of Land Management for a noncompetitive oil and gas lease on that particular property.

Defendant Monolith Portland Cement Co. is the owner of placer mining claims on the land, by reason of notices of location dated March 26, 1948 and recorded June 3, 1948.

On October 30, 1950, plaintiff Joseph L. Call filed his application for a noncompetitive oil and gas lease on the premises in question. At the time the Call application was filed the application of defendant Gillbergh was of record, as were the placer claim locations mentioned above.

On March 1, 1951, the government through inadvertence entered into a lease with plaintiff Call. On May 16, 1951, notice was sent to Joseph L. Call, which read in part as follows:

"At the time application 043689 [the Call application] was filed on October 30, 1950 a prior application, 037302 filed June 26, 1946 [the Gillbergh application] was of record * * *.

"The Director, Bureau Land Management, Washington, D. C., has stated that leases erroneously issued must be canceled * * *.

   *    *    *    *    *    *

"Under the circumstances, lease 043689 is hereby held for cancellation * * *."

On April 23, 1951, plaintiff filed this action against the defendants to quiet title.

On July 31, 1951, the Department of the Interior, Bureau of Land Management, notified the plaintiff that the lease was canceled. Plaintiff has not in any way attempted to override the decision of the Bureau of Land Management.

It is plaintiff's contention that the provisions of the Act of February 25, 1920, 30 U.S.C.A. § 188, apply in this case: "Any lease * * * may be forfeited and canceled by an appropriate proceeding in the United States district court for the district in which the property, or some part thereof, is located * * *."

And plaintiff further contends that after the lease was executed the Department of the Interior, Bureau of Land Management, lost any jurisdiction to cancel it; and that the only manner in which the lease may be canceled is by appropriate action in the United States district court.

The claims of defendants Monolith Portland Cement Co. and J. R. Gillbergh are prior in time to that of the plaintiff herein. Although the lease issued to plaintiff was issued through mistake and inadvertence, nevertheless it is plaintiff's contention that he now has rights superior to those of the defendants herein, subject to the right of the government to file an appropriate action to terminate the lease.

Plaintiff is relying upon a strict interpretation of the Act of February 25, 1920, as set forth in 30 U.S.C.A. § 188, as amended August 8, 1946, Chapter 916, Section 9, 60 Stat. 956, supra.

If the lease issued by the government through inadvertence and mistake is a valid lease, plaintiff's contention may be correct. However, the issue in this case turns upon the question of whether or not plaintiff has a valid lease.

The rule is set forth in 17 C.J.S., Contracts, § 144, at page 499: "Where certain facts assumed by both parties are the basis of a contract, and it subsequently appears that such facts did not exist, there is no agreement. Thus, where parties agree in regard to a thing which, unknown to both parties, does not exist at the time, there is no contract for there is no subject matter. So, also, where parties contract under a mutual belief that a right exists which in fact does not exist, there is no agreement; * * *."

At the time the contract was entered into between the plaintiff herein and the government, did the right exist on the part of the government to enter into the contract? Or, in other words, did the government at the time the lease was executed have a right to lease the land in question, when there was a prior application for an oil and gas lease and prior placer claim locations of record?

From the very beginning this government has followed a consistent policy relative to its public lands. Regardless of the phase of endeavor, the policy has always been the same. It can be stated thus: "The first comer (or the first locator) obtains a right prior to all subsequent comers or locators."

With the opening of vast areas of government land in the west, it was the government's established policy to give to the person who located the homestead first the prior right, and any one attempting to encroach upon the right of the first locator was promptly turned down by the courts. During the era of the cattle barons who preempted government lands on the great plains for the benefit of their herds, many a bloody battle was fought over the right to use the few and infrequent water holes. Again, the one who first located or appropriated the water supply obtained a right, good against subsequent users.

The doctrine of prior appropriation has been used extensively, regarding irrigation water rights, and the old doctrine of riparian rights gave way to a large extent in the west to the doctrine of appropriation. The doctrine in the western part of the United States for many years has been that the person who appropriated water first, for a beneficial use, obtained a right against all subsequent users. This doctrine is again being litigated with reference to division of the waters of the Colorado River, as arguments are now going on among the various interests relative to the question of which has prior rights.

■ This doctrine of prior appropriation has become established in the mining law, probably stronger than in any other phase of the law, because mining law has been based upon the theory that the one who first discovered the mineral, either lode or placer, located it and recorded its location, obtained a right superior to the rights of any subsequent claimant.

· ■ It is not strange, therefore, when Congress came to write a new law concerning oil and gas leases on government land that it extended into that field of law the same theories which had been used in other fields of law—that is, to give to the one who filed first a prior right, good as against subsequent applicants.

The Secretary of the Interior recognized this doctrine when (in the case of Russel Hunter Reay v. Gertrude H. Lackie, [L.D.] No. A–24670, August 12, 1947, Numbers "N" Los Angeles 055644, Los Angeles 054899) on appeal from a decision of the Bureau of Land Management, he stated: "Section 17 thus placed upon the Bureau a statutory duty to honor the preference thus accorded to the first applicant for a noncompetitive oil and gas lease * *."

The foregoing case was another instance where a prior application was overlooked by the District Land Office, and a lease was erroneously issued.

It is the opinion of this Court that prior applicants obtain prior rights and that a subsequent execution of a lease, in error, cannot wipe out or do away with such prior rights.

Congress, in enacting the oil and gas leasing law, provided for an administrative procedure for those aggrieved because of decisions of the Bureau of Land Management. Title 43 of the Code of Federal Regulations, Section 221.43, provides for an appeal to the Director of the Bureau of Land Management from any decision by the Bureau of Land Management; and Section 221.73 provides for a further appeal from a decision of the Director of the Bureau to the Secretary of the Interior.

■ The general rule is that where an administrative remedy is provided by law, an aggrieved party must first exhaust such remedy before he has the right to appeal to the courts.

The United States Court of Appeals for the Ninth Circuit has held that the Federal courts do not have jurisdiction to entertain an action until the administrative remedy has been exhausted. La Verne Co-op. Citrus Ass'n v. U. S., 9 Cir., 143 F.2d 415.

■ In the case at bar plaintiff made a motion for judgment on the pleadings. Defendant J. R. Gillbergh made a motion for summary judgment, as also did defendant Monolith Portland Cement Co. It is not possible for the Court to grant plaintiff's motion, because it appears that defendants may have rights prior to that of the plaintiff herein; and it appears further that plaintiff has not exhausted his administrative remedies. Until he does exhaust such remedies, he does not have the right of recourse to the Federal courts.

Also, the defendants' motions for summary judgment cannot be granted by this Court. There is now pending before the Bureau of Land Management a proceeding to determine the rights of the defendants Gillbergh and Monolith Portland Cement Co. If, by any reason, the Bureau of Land Management holds that neither J. R. Gillbergh nor Monolith Portland Cement Co. has any right to the property herein involved, then the prior right would evidently be held by plaintiff Joseph L. Call.

It is not possible for the Court at this time to determine that either plaintiff or defendants do not have any interest in the property in question. This matter should be ascertained by the Bureau of Land Management under the administrative procedures as set forth in the Act. Until administrative remedies have been exhausted, neither plaintiff nor defendants have any right to ask this Court to solve the problem. As a consequence, this action will be ordered dismissed.

Findings of Fact, Conclusions of Law, and Judgment in conformity herewith are to be prepared by the defendants herein.